**No. 24-40673**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

V.

JESUS ELOY GARCIA
Defendant-Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas, Laredo Division

_____

**BRIEF OF DEFENDANT-APPELLANT
JESUS ELOY GARCIA**
_____

OSCAR A. VELA, JR.
Federal ID #22481
State Bar No. 24004967
ovela@thevelafirm.com

**THE VELA FIRM**
6557 Metro Ct., Ste. 3
Laredo, Texas 78041
Telephone; (956) 568-0021
Facsimile: (956) 568-0052

Attorney for Defendant-Appellant
Jesus Eloy Garcia

## CERTIFICATE OF INTERESTED PERSONS

UNITED STATES OF AMERICA,
        Plaintiff-Appellee,

       v.                                Case No. 24-40673

JESUS ELOY GARCIA,
        Defendant-Appellant,

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

1. Jesus Eloy Garcia, Defendant-Appellant.

2. Oscar A. Vela, Jr., Counsel for Defendant-Appellant,

3. United States of America, Plaintiff-Appellee.

4. Carmen Castillo Mitchell, Counsel for Plaintiff-Appellee

/s/ Oscar A. Vela, Jr.
OSCAR A. VELA, JR.

**STATEMENT REGARDING ORAL ARGUMENT**

Defendant-Appellant, Jesus Eloy Garcia requests oral argument because the case involves important issues related to the protections afforded by the Fourth Amendment involving an illegal investigatory stop and detention.

Counsel's familiarity with the record and proceedings below will assist this Court in considering the issues on appeal.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ……………….. i

STATEMENT REGARDING ORAL ARGUMENT...………… ii

TABLE OF CONTENTS ………………………………………. iii-iv

TABLE OF CITATIONS ……………………………………… v-vii

STATEMENT OF JURISDICTION …………………………... 1

STATEMENT OF THE ISSUES...…………………………….... 2

STATEMENT OF THE CASE ………………………………... 3

     A.    Proceedings Below ………………………………….. 3

          1.    The Indictment …………………….…………. 3
          2.    Motion to Suppress Evidence……………..... 3
          3.    Conditional Plea …………………………… 4
          4.    Sentencing and Notice of Appeal …………. 4

     B.    Statement of the Facts…………………………….. 5

          1.    Hearing on Motion to Suppress…………… 5
          2.    Investigative Traffic Stop and Detention ….. 5-7

SUMMARY OF THE ARGUMENT …………………….…… 8

ARGUMENT …………………………………………………... 9

ISSUE ONE: The district court erred in denying a motion to suppress where law enforcement officers lacked reasonable suspicion to justify an investigatory traffic stop and detention. The resulting illegal detention violated the Fourth Amendment of the United States Constitution, and all evidence derived therefrom was excludable. ………………………………………………………………… 9

A.  Summary of argument ……………………….…....    9

B.  Standard of review…………………………….......    9

C.  The LPD BOLO did not provide reasonable suspicion
    to justify the investigative stop and detention ……..    9-14

D.  Garcia's detention was not supported by reasonable
    suspicion..…………………………………………    15

E.  The evidence obtained from the illegal stop and
    detention was excludable………………………….    15-17

CONCLUSION …………………………………………    18

CERTIFICATE OF SERVICE ………………………….    19

CERTIFICATE OF COMPLIANCE …………………….....    20

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Adams v. Williams*, 407 U.S. 143 (1972)………………………… 10

*Alabama v. White*, 496 U.S. 325 (1990)………………………… 11

*Dunaway v. New York*, 442 U.S. 200 (1979)…………………… 15

*Florida v. J.L.*, 529 U.S. 266 (2000)…………………………….. 13

*INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984)…………………. 17

*Katz v. United States*, 389 U.S. 347 (1967)…………………… 16

*Michigan v. Fisher*, 130 S.Ct. 546 (2009)……………………… 16

*Navarrette v. California*, 572 US. 393 (2014)…………………... 10, 16

*Terry v. Ohio*, 392 U.S. 1 (1968)……………………………….. 14, 15

*Segura v. United States*, 468 U.S. 796 (1984)…………………. 16

*Wong Sun v. United States*, 371 U.S. 471 (1963)……………….. 17

*United States v. Alvarez, 40 F.4ᵗʰ 339 (2022)*…………………… 13

*United States v. Crews*, 445 U.S. 463 (1980)…………………… 16

*United States v. Garza*, 727 F.3d 436 (5ᵗʰ Cir. 2013)………….. 12

*United States v. Gomez*, 623 F.3d 265 (5ᵗʰ Cir. 2010)…………… 9, 16

*United States v. Gonzalez*, 190 F.3d 668 (5ᵗʰ Cir. 1999)………… 10

*United States v. Hill*, 752 F.3d 1029 (5ᵗʰ Cir. 2014)……………… 15

*United States v. Jaquez*, 421 F.3d 338 (5th Cir. 2005)……………. 14

*United States v. Jones*, 998 F.2d 883 (10th Cir. 1993)…………… 13

*United States v. Keith*, 375 F.3d 346 (5th Cir. 2004)…………….. 9

*United States v. Oscar-Torres*, 507 F.3d 224 (4th Cir. 2007)…… 17

*United States v. Rodriguez*, 564 F.3d 735 (5th Cir. 2009)………. 10

*United States v. Roch*, 5 F.3d 894 (5th Cir. 1993)………………… 13

*United States v. Rose*, 48 F.4th 297 (5th Cir. 2022)……………….. 10

*United States v. Sanchez-Ibarra*, 199 F.3d 753 (5th Cir. 1999)…… 13

*United States v. Sokolow*, 490 U.S. 1 (1989)……………………. 13

*United States v. Vickers*, 540 F.3d 356 (5th Cir. 2008)…………... 10

*United States v. Wright*, 74 F.4th 722 (5th Cir. 2023)……………. 12

*Wong Sun v. United States*, 371 U.S. 471 (1963)……………… 17

## STATUTES AND RULES

18 U.S.C. §922(g)(1)……… ………………………………….. 3

18 U.S.C. §924(a)(2) …………………………………………... 3

18 U.S.C. §841(a)(1)……………………………………………… 3

18 U.S.C. §841(B)(1)(C)……………………………………….. 3

21 U.S.C. §846 ………………………………………………….… 3

21 U.S.C. §856(a)(2)……………………………………………. 3

28 U.S.C. §1291 ………………………………………………… 1

Fed. R. App. P. 4(b) …………………………………….............    1

Fed. R. App. P. 32(a)(5)……………………………………    20

Fed. R. App. P. 32(a)(6)…………………………………….    20

Fed. R. App. P. 32(a)(7)(B)……………………………………    20

Fed. R. App. P. 32(a)(7)(B)(iii)……………………………….    20

5th Cir. R. 25.2.13…………………………………………...    20

5th Cir. R. 25.2.1…………………………………………….    20

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. IV……………………………………..    iii, 3, 8, 9, 16

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this appeal under Section 1291, Title 28 United States Code, as an appeal from a final judgment of conviction and sentence in the United States District Court for the Southern District of Texas, Laredo, Division.

Notice of appeal was timely filed in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

**ISSUE ONE RESTATED**: The district court erred in denying Appellant's motion to suppress where law enforcement officer lacked reasonable suspicion to justify an investigative stop and detention. The resulting search and seizure violated the Fourth Amendment of the United States Constitution, and all evidence derived therefrom was excludable.

# STATEMENT OF THE CASE

## A.    Proceedings Below

### 1.    The Indictment

On April 19, 2022, Jesus Eloy Garcia (herein after "Garcia" and/or "Appellant") was charged by indictment with one count of possession of a firearm by a convicted felon in violation of Title 18 U.S.C. §§922(g)(1) and 924(a)(2), one count of conspiracy to possess with intent to distribute a controlled substance in violation of Title 21 U.S.C. 846, 841(a)(1) and 841(b)(1)(C), and one count of knowingly managing a place used to distribute a controlled substance in violation of Title 21 U.S.C. §856(a)(2).  ROA.26[1], RE1, RE2.

### 2.    Motion to Suppress Evidence

On September 28, 2023, Garcia filed a motion to suppress evidence arguing the Laredo Police Department violated his rights under the Fourth Amendment by conducting an illegal investigative stop and detention unsupported by reasonable suspicion. ROA.148.

On December 12, 2023, the Court denied Garcia's motion to suppress. ROA.229, RE3.

---

[1] "ROA" refers to Record on Appeal and citied by page number. Example "ROA.page number." "RE" refers to Record Excerpt and cited by number. Example "RE#."

### 4. Conditional Plea

On December 20, 2023, Garcia entered a conditional plea to Count 1 of the indictment reserving his right to appeal the denial of his motion to suppress and his motion to dismiss the indictment. ROA.648, RE4.

### 5. Sentencing and Notice of Appeal

On September 27, 2024, the court sentenced Garcia to 42 months of imprisonment. ROA.255, RE5. Garcia timely filed his notice of appeal. ROA.261, RE6.

**B.    Statement of Facts**

**1.    Hearing on Motion to Suppress Evidence**

On November 29, 2023, the court conducted a hearing on Garcia's motion to suppress (DKT Entry 11/29/2023). ROA.417. A total of four witnesses testified. ROA.417-591. The parties introduced various exhibits, including videos capturing the traffic stop and photographs obtained during the traffic stop. ROA.17 (Docket Entry 11/29/2023).

**2.    The Investigative Traffic Stop and Detention**

On June 9, 2020, Captain Ortiz of the Laredo Police Department ("LPD") testified he encountered (the "Encounter") a blue Cadillac SUV ("Cadillac") being driven by Eduardo Ciprian ("Ciprian") in Laredo, Texas. At the time of the encounter Garcia was the front passenger in the vehicle. ROA.443.

During the suppression hearing, Captain Ortiz testified he recognized the vehicle from a BOLO that had been issued that morning. ROA.443. After the Cadillac stopped, Captain Ortiz approached the Cadillac in full uniform and spoke to the occupants. ROA.440. Captain Ortiz ordered the driver of the Cadillac to turn off the vehicle and ordered the occupants to remain in the vehicle. ROA.440. Captain Ortiz called LPD dispatch and requested back up. Five to ten minutes later, at least

three LPD units and six uniformed police officers appeared at the scene. ROA.455, DX6[2].

LPD officers ordered the occupants to exit the Cadillac, placed them up against another vehicle, conducted pat downs, ordered them to remain where they were standing, and requested identification from each occupant. ROA.443, 455-57, DX5-6.

LPD officers took Garcia's identification and quickly conducted a request for information ("10-43") on Garcia. ROA.492, DX1, 16:04:20[3]. Garcia's information came back clean, but Garcia remained detained for over 25-30 minutes. ROA.96, DX1, 2. Ciprian's information came back positive for an outstanding warrant, and he was arrested and placed in an LPD patrol unit. ROA.484.

As a result of the stop and ordering Garcia out of the vehicle, LPD officers were able to obtain bodycam video footage of Garcia and made personal observations as to Garcia's clothing and jewelry. DX1, GX4, ROA.638-647. The video footage and personal observations of Garcia were later used to make comparisons from a photo obtained from Ciprian's cell phone, wherein Ciprian and a masked individual (later identified as Garcia) were holding firearms. ROA.794-95, 801-02. The masked individual was wearing distinctive jewelry which officers

---

[2] The term "DX" refers to Defense exhibit followed by the exhibit number. The term "GX refers to Governments exhibit followed by the exhibit number.
[3] Video time stamp reference.

claimed Gacia was wearing on the date of the Encounter. The screenshots were used to implicate Garcia in the felon of possession charge in the case, and he was subsequently indicted.

Garcia claimed the video footage and personal observations were obtained from the unlawful stop and detention, and the evidence should have been suppressed. ROA.147-152, DKT 216, ROA.210-217, DKT 233.

On December 12, 2023, the court denied Garcia's motion to suppress. ROA.228, RE3. In its ruling the court found the LPD BOLO provided reasonable suspicion for the investigatory detention, Garcia's investigatory detention was reasonable, and Garcia did not have an expectation of privacy to exclude his physical appearance.

Garcia now appeals the court's denial of his motion to suppress.

## SUMMARY OF THE ARGUMENT

The trial court erred in denying Garcia's motion to suppress evidence. The Laredo Police Department lacked reasonable suspicion to support the investigative traffic stop and detention. All evidence obtained from the illegal stop and detention was excludable under the Fourth Amendment of the United States Constitution.

Based on the facts of this case and the arguments made herein, the Court should reverse the trial court's denial of Garcia's motion to suppress and should vacate his conviction.

# ARGUMENT

**ISSUE ONE RESTATED:** The district court erred in denying Garcia's motion to suppress where the Laredo Police Department lacked reasonable suspicion to justify the investigative stop and detention. The resulting stop and detention violated the Fourth Amendment of the United States Constitution, and the evidence was suppressible.

## A.    Summary of argument

The trial court erred in finding Laredo Police Department had reasonable suspicion to support the investigative stop and detention in this case. Based on the totality of the circumstances, there were no articulable facts that would support reasonable suspicion to justify the investigative stop and detention. The BOLO did not provide reasonable suspicion to justify the investigative stop and detention. The illegal stop and detention violated Garcia's Fourth Amendment Rights, and the evidence obtained therefrom was suppressible.

## B.    Standard of review

When a district court denies a defendant's motion to suppress, this Court reviews the district court's legal conclusions de novo and its finding of fact, including credibility determinations, for clear error. *United States v. Keith*, 375 F.3d 346, 348 (5th Cir. 2004); *United States v. Gomez*, 623 F.3d 265, 268 (5th Cir. 2010).

## C.    The LPD BOLO did not provide reasonable suspicion to justify the investigatory detention.

Whether an officer has reasonable suspicion to conduct a traffic stop is answered from the facts known to the officer at the time of the stop. *United States v.*

*Vickers*, 540 F.3d 356, 361 (5ᵗʰ Cir. 2008). Reasonable suspicion "takes into account the totality of the circumstances - the whole picture." *Navarrette v. California*, 572 US. 393, 397 (2014).

Reasonable suspicion does not have to be based on personal observations. It can be based on information provided by a confidential informant if the information possesses "an indicia of reliability. *Adams v. Williams*, 407 U.S. 143, 147 (1972). The Fifth Circuit generally refers to the following factors to determine reliability of the informant: (1) the informant asserts eyewitness knowledge of the reported event; (2) reports contemporaneously with the event; and (3) uses the 911 emergency system, which permits call tracing and voice recording. *United States v. Rose*, 48 F.4ᵗʰ 297, 302 (5ᵗʰ Cir. 2022); *Navarette v. California*, 572 U.S. 393, 398 (2014).

Additionally, an alert or BOLO report may provide the reasonable suspicion necessary to justify an investigatory stop. *United States v. Gonzalez*, 190 F.3d 668, 671, 672 (5ᵗʰ Cir. 1999). Whether a particular tip or BOLO report provides a sufficient basis for an investigatory stop may depend upon (1) the credibility and reliability of the informant, (2) the specificity of the information contained in the tip or report, (3) the extent to which the information in the tip or report can be verified by officers in the field, and (4) whether the tip or report concerns active or recent activity, or has instead gone state. *Id*.; *see also United States v. Rodriguez*, 564 F.3d 735 (5ᵗʰ Cir. 2009) (approving roving patrol stop based both on a great deal of

information in the BOLO in addition to other border patrol observations supporting stop). Whether the report or tip came from a known informant or was anonymous also merits consideration on the reasonable suspicion analysis. *See Alabama v. White*, 496 U.S. 325, 328-32 (1990).

In this case, the trial court erred in finding that the LPD BOLO provided reasonable suspicion for the investigative detention. The LPD incident report that was used to create the BOLO contained an entry from a caller reporting that a "black SUV Cadillac missing a right taillight" shot 7 or 8 shots in the air at 2201 E. Travis St., Laredo, Texas. ROA.628, DX 7. No information was provided as to the particular model of the vehicle, the identity of the alleged shooter, the names or number of occupants of the vehicle, the description of the occupants, or names provided. *Id*. Additionally, no witness provided information about the vehicle's license plate or whether the vehicle had paper tags. ROA.417, DX 7.

The information provided in the BOLO about a "grey SRX Cadillac SUV with paper plates" was provided by officers independently from the caller who reported the shots fired incident. Specifically, after investigating the shots fired call, officer Garza located a "potential vehicle" that allegedly matched the description which was parked in a residential driveway at the 200 block of Park Street with paper plates 711804F4. Officer Garza entered a safety lookout on a Grey Cadillac SUV with paper plates 71180F4. ROA.465-66, DX 7, pg. 4-5. However, Officer Garza had no

11

information to suggest that the grey Cadillac SUV was the vehicle involved in the reported incident and no witness provided license plate information to suspect vehicle. ROA.547. No witness to the shots fired incident reported this information to police and no information was provided to officers that would justify the belief that the grey vehicle found parked in a residential driveway at 200 Park Street was the vehicle involved in the shots fired incident report at a different address. ROA.465-66, DX 7. Additionally, the fact that Officers Elizando and Morales had independently encountered this vehicle 5 days prior, did not lay the foundation for the BOLO as found by the trial court.

The trial court's reliance on the collective knowledge doctrine did not support the conclusion that the BOLO provided reasonable suspicion. *See* ROA.242, RE3 pg. 14 (citing *United States v. Wright*, 74 F.4th 722 (5th Cir. 2023) (holding that a police officer may rely on the collective knowledge of all the officers involved in the investigation for reasonable suspicion). The information provided in the BOLO by the personal observations of officers Garza, Elizondo and Morales was based on mere speculation and did not provide reasonable suspicion. *United States v. Garza,* 727 F.3d 436, 440 (5th Cir. 2013) (reasonable suspicion requires more than merely an un-particularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence). Because the Government did not establish reasonable suspicion that could have been transferred between the officers/agents, the collective

12

knowledge doctrine did not apply and could not be used to support reasonable suspicion. *Cf. United States v. Alvarez*, 40 F.4th 339 (2022), citing *Untied States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).

Based on the information provided by the caller regarding the shots fired report and the information that was used to create the BOLO, LPD officers did not have reasonable suspicion to support an investigative detention. *See United States v. Jones, 998 F.2d 883, 885 (10th Cir. 1993)* (holding "flimsy" description of two black men in black Mercedes did not support stop "based solely on the color and manufacturer of the car, and the fact that it contained two black men," particularly with no showing that "the sight of two African Americans in a black Mercedes was a highly unusual event").

Furthermore, while not squarely on point, two cases that involved anonymous tips offer guidance to the analysis in this case. In *Florida v. JL,* 529 U.S. 266 (2000)*,* the Supreme Court held that an anonymous tip identifying a particular person wearing specific clothing and carrying a firearm was insufficient to support a reasonable suspicion to detain the individual. Similarly, in *United States v. Roch,* 5 F3d 894 (5th Cir. 1993), the police received a tip describing the defendant, his vehicle, that he was armed, a convicted felon, threatened to kill a police officer and established surveillance and subsequently stopped and initiated an immediate arrest of the defendant. This Court found that the detention and arrest of the defendant, was

unsupported by reasonable suspicion because police did not observe the defendant commit any criminal offense, exhibit questionable behavior, or break any traffic laws. Additionally, the police took no steps to confirm his convicted felon status.

In this case, the only facts known to the police regarding the potential vehicle involved in the shots fired report to support a BOLO was about a "black SUV Cadillac missing a right taillight" who shot 7 or 8 shots in the air. ROA.538, DX 7, pg. 3. The distinct information was a "black SUV Cadillac" and "missing a right taillight." There was no information about the year or model of the vehicle, its occupants, license plates, paper tags, and the information was insufficient to support an investigative detention. *United States v. Jaquez*, 421 F.3d 338 (5th Cir. 2005) (finding investigative stop unreasonable where officer knew only that "a red vehicle" had been involved in a reported incident approximately 15 minutes earlier, in the same general area where she first spotted the car with no information about the occupants).

Therefore, the government failed to prove that Officer Ortiz had reasonable suspicion to justify the investigative detention and Garcia's detention on the BOLO. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Sokolow*, 490 U.S. 1 ,7 (1989) (an officer making a Terry stop must be able to articulate something more than an inchoate and unparticularized suspicion or hunch).

**D.      The Lack of Reasonable Suspicion Prohibited Garcia's Detention.**

The Fourth Amendment generally requires officers to obtain a warrant before searching or seizing an individual. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968). However, police officers may briefly detain a person for investigative purposes if they can point to "specific and articulable facts" that give rise to a reasonable suspicion that the suspect had committed, is committing, or is about to commit a crime. *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014).

Because Office Ortiz did not have reasonable suspicion to support the investigative stop, any subsequent detention was unlawful and in violation of Garica's Fourth Amendment rights against unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *Dunaway v. New York*, 442 U.S. 200 (1979) (holding that the involuntary detention and interrogation of and individual without probable cause on the grounds he possessed information about an unsolved crime constituted and unreasonable seizure).

**E.      The evidence obtained from the illegal stop and detention was excludable**

The trial court erred in finding that Garcia did not have a reasonable expectation of privacy to exclude the video footage of his physical appearance under the exclusionary rule because his appearance was open to the public. ROA.245-246, RE3, pg. 17. The trail court further erred in finding that Garcia failed to establish that he had a subjective expectation of privacy, and that such expectation would be

one society was prepared to recognize. ROA.246, RE3, at pg. 18, citing *Katz v. United States*, 389 U.S. 347 (1967).

Garcia was not found or encountered on the street in public view, rather, he was illegally detained and ordered to exit the vehicle he occupied for which he had a subjective expectation of privacy in his person and in the vehicle he occupied. *See Segura v. United States*, 468 U.S. 796, 806 (1984) (a seizure affects a person's possessory interests, while a search affects a person's "privacy interests"; *Katz v. United States*, 389 U.S. 347, 358-59 (1967) (holding that electronic eavesdropping by the government to an individual's conversations in a phone booth constitutes a "search and seizure" within the meaning of the Fourth Amendment. Further stating that, "[w]herever man may be, he is entitled to know that he will remain free from unreasonable searches and seizure."; *United States v. Crews*, 445 U.S. 463 (1980) (exclusionary rule applies to intangibles, such as observations or statements, stating, "the exclusionary sanction applies to any 'fruits' of a constitutional violation – whether such evidence be tangible … [or] items observed or words overheard in the course of the unlawful activity…."; *compare Michigan v. Fisher*, 130 S.Ct. 546, 549 (2009) (police observations made inside a suspects home that were used as evidence were not suppressible under the emergency aid exception to the Fourth Amendment).

But for being ordered out of the vehicle, officers would not have obtained the identifying information they used to indict Garcia. Because the evidence was

16

obtained as a result of the unlawful seizure was the fruit of the poisonous tree and should have been excluded. *See United States v. Oscar-Torres*, 507 F..3d 224 (4th Cir. 2007) (finding that a close examination of *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984) does not prohibit suppression of evidence a defendant's identity and evidence is suppressible if obtained by "exploitation" of the initial police illegality, citing *Wong Sun*, 371 U.S. at 488).

This Court should reverse the trial court's denial of Garcia's motion to suppress and vacate his conviction.

## CONCLUSION

For the foregoing reasons, this Court should reverse the trial court's denial of

Garcia's motion to suppress and vacate Garcia's conviction.

Respectfully Submitted,

/s/ Oscar A. Vela, Jr.
Oscar A. Vela, Jr.
Federal Bar No: #22481
State Bar No:  24004967
ovela@thevelafirm.com

**THE VELA FIRM**
6557 Metro Ct.  Ste. 3
Laredo, Texas 78041
Telephone: (956) 568-0221
Telecopier: (956) 568-0052

Attorney for Defendant/Appellant
Jesus Eloy Garcia

## CERTIFICATE OF SERVICE

I certify that on May 14, 2025, a copy of Defendant-Appellant Jesus Eloy Garcia's Appellate brief was served on Assistant U.S. Attorney, Carmen Castillo Mitchell via ECF.

/s/ Oscar A. Vela, Jr.
Oscar A. Vela, Jr.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3030 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2025 in Times New Roman, Font 14 and Foot Notes in Font 12.

3.    This brief complies with the electronic submission of 5th Cir. R. 25.2.13 because the brief has been redacted of any personal data identifiers.

4.    This brief complies with the electronic submission of 5th Cir. R. 25.2.1, because the brief is an exact copy of the paper document.

5.    This brief is free of viruses because the brief has been scanned for viruses with the most recent version of a virus scanning program.

/s/ Oscar A. Vela, Jr.
Oscar A. Vela, Jr.